IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 07-cv-00036-REB-CBS

DEBORAH GANTOS,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS POLICE DEPARTMENT,
OFFICER J. WATERS, in his individual capacity, and
OFFICER JOHNSON, in his individual capacity,

    Defendants.

# ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the defendants' **Motion for Summary Judgment** [#83], filed November 15, 2007. The plaintiff filed a response [#94], and the defendants filed a reply [#100].[1] I grant the motion.

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). FED. R. CIV. P. 56 (c) provides that the court may grant summary judgment when "the pleadings,

---

[1] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* FED. R. CIV. P. 56(c) and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that the hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in his or her pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1517 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990)).

In the present motion, both of the individual defendants, Officer Jim Waters and Officer Daryl Johnson, argue that the doctrine of qualified immunity shields them from the plaintiff's claims. Qualified immunity shields public officials from civil damages liability if their actions did not "'violate clearly established statutory or constitutional

2

rights of which a reasonable person would have known.'" ***Pino v. Higgs***, 75 F.3d 1461, 1467 (10th Cir. 1996) (quoting ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982)). The qualified immunity defense "cannot be analogized to other affirmative defenses because of the interests implicated in suits against government officials. Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial." ***Pueblo Neighborhood Health Centers, Inc. v. Losavio***, 847 F.2d 642, 645 (10th Cir.1988). The immunity is only available to those defendants sued in their individual capacities. ***See Moore v. City of Wynnewood***, 57 F.3d 924, 929 n. 4 (10th Cir.1995).

A motion for summary judgment asserting the defense of qualified immunity must be reviewed differently from other summary judgment motions. ***Holland v. Harrington***, 268 F.3d 1179, 1185 (10th Cir. 2001), cert. denied, 535 U.S. 1056 (2002). After a defendant asserts qualified immunity, the burden shifts to the plaintiff. ***Scull v. New Mexico***, 236 F.3d 588, 595 (10th Cir.2000). The plaintiff must establish first "that the defendant's actions violated a constitutional or statutory right." ***Albright v. Rodriguez***, 51 F.3d at 1531, 1534 (10th Cir. 1995); ***Wilson v. Layne***, 526 U.S. 603, 609 (1999) (noting the court must first decide whether the plaintiff has alleged deprivation of a constitutional right). This burden entails coming forward with specific facts establishing the violation. ***Taylor v. Meacham***, 82 F.3d 1556, 1559 (10th Cir.1996).

If the plaintiff establishes a violation of a constitutional or statutory right, then he must demonstrate that the right at issue was clearly established *at the time* of the defendant's alleged unlawful conduct. ***Albright***, 51 F.3d at 1534. To demonstrate clearly established law, the plaintiff must cite "a Supreme Court or Tenth Circuit

3

decision on point, or the clearly established weight of authority from other courts," which find the law to be as the plaintiff maintains. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992). The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law establishing that the defendant's actions clearly were prohibited. *Hilliard v. City and County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991) (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990)). In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. at 615. However, the plaintiff need not establish a "precise correlation between the then-existing law and the case at hand." *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir.1992).

If the plaintiff satisfies both of these elements, then the burden shifts to the defendant. Unless the defendant demonstrates that there is no disputed issue of material fact relevant to the immunity analysis, a motion for summary judgment based on qualified immunity must be denied. *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991). If the plaintiff fails to satisfy either part of the two-pronged inquiry, then the court must grant qualified immunity. *Albright*, 51 F.3d at 1535. In short, although the court must review the evidence in the light most favorable to the plaintiff, the record must demonstrate clearly that the plaintiff has satisfied this heavy two-part burden. In civil rights cases, a defendant's unlawful conduct must be demonstrated with specificity. *Davis v. Gracey*, 111 F.3d 1472, 1478 (10th Cir. 1997).

## III. FACTS

This case concerns the events and circumstances relating to the execution of a search warrant at the home of the plaintiff, Deborah Gantos. At 8:00 a.m., on February 10, 2005, Gantos was asleep in her small home. She was awakened by knocking on her front door and shouts of "Police, Open Up." *Response to motion for summary judgment* [#94], filed January 9, 2008, (*Response*), Exhibit 3 (Gantos Depo.), 17:2 - 3. After looking out of the window in her front door, Gantos opened the front door. Several police officers were standing outside of Gantos's front door. Immediately after Gantos opened the door, the officer closest to her, defendant, Officer Jim Waters, grabbed her left arm. *Gantos Depo.* 17:12. Almost immediately thereafter, another officer, defendant, Officer Daryl Johnson, grabbed Gantos's right arm. *Gantos Depo.* 17:13. Officers Waters and Johnson are officers of the Colorado Springs Police Department (CSPD). These two officers then backed Gantos up across her small living room and the other police officers entered the house to conduct the search. *Ganto Depo.* 17:12 -17. Officers Waters and Johnson continued to hold Gantos. The officers executing the search warrant had information indicating that the individuals associated with the warrant were known to be users of methamphetamines, possibly were unstable, were known to possess weapons, and were associated with individuals who previously had shot at the police.

Gantos says that after a couple of minutes, the two officers who had grabbed her arms then let go of her. She says she then dropped to the floor and crawled to the front door. *Gantos Depo.* 17:18 - 20; 30:7 - 11. Officer Waters testified in his deposition that he told Gantos to get down on the floor, and he pulled Gantos down to the floor by

5

applying pressure to her night shirt.  *Response to motion for summary judgment*, Exhibit 4 (Waters Depo.), 57:7 - 63:8.  Gantos says she was screaming and asking "what's going on" as the officers held her.  However, she says she was being held so tightly that she could not move to twist, turn, or try to pull away.  *Gantos Depo.* 32:21 - 33:23.  Officer Waters did not interpret any of Gantos's actions as an attack on or threat to Officer Waters or the other officers.  *Response to motion for summary judgment* [#94], Exhibit 4 (Waters Depo.), 58:11 - 19.

A short time after she was released by the officers who were holding her, Gantos noted pain in her left shoulder.  Gantos says she suffered a multifragmented proximal left humerus anterior-inferior dislocation fracture to her left shoulder as a result of the force used by the police officer who grabbed her left arm as the police entered her house on February 10, 2005.  Her injury became apparent while the police officers still were in her home, and she informed officers at the scene that she was injured.  In her Second Claim for Relief, Gantos alleges that Officers Waters and Johnson used excessive and unreasonable force to enter her residence, that Officer Waters used excessive and unreasonable force to restrain her, and that Officer Johnson failed to intervene to prevent the improper use of force by Officer Waters.

### IV.  EXCESSIVE FORCE CLAIM

"Excessive force claims are evaluated under the Fourth Amendment standard of objective reasonableness."  *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).  This standard requires a highly fact-specific examination of the totality of the circumstances confronting the officers at the time of the events in question.  *See Ohio v. Robinette*,

519 U.S. 33, 39 (1996); *Jiron*, 392 F.3d at 414. Among the relevant factors that may be considered in this analysis are the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Jiron*, 392 F.3d at 414-15.

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 396-97 (internal citations and quotations omitted).

When a police officer seeks the protection of qualified immunity on an excessive force claim, two questions are relevant. First, viewing the evidence in the light most favorable to the plaintiff, I must determine if the evidence shows that the amount of force used was unreasonable and, therefore, impermissible under the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if the force used was unreasonable, then I must determine if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. Stated

7

differently, the second inquiry requires the plaintiff to demonstrate that an objectively reasonable police officer could not have thought that the force used was constitutionally permissible, thus demonstrating a violation of clearly established law. ***Cortez v. McCauley***, 478 F.3d 1108, 1128 (10th Cir. 2007). Again, it is the plaintiff's burden to satisfy both of these elements.

A. Was the Force Used Unreasonable?

Police officers entering a house to execute a search warrant are entitled to use force to detain and control the occupants of the house while a proper search is conducted. ***Muehler v. Mena***, 544 U.S. 93, 98 (2005). Officers may use such force as is necessary to "exercise unquestioned command of the situation." ***Michigan v. Summers***, 452 U.S. 692, 703 (1981). When the officers entered Gantos's house, they were executing a warrant related to a serious suspected crime. They had no knowledge about whether or not Gantos posed an immediate threat to their safety, or whether other threats were present in the house. Gantos does not argue that, in a general sense, the use of force was not appropriate when the police officers entered her house to execute a search warrant. However, she argues that Officer Waters used an unreasonable level of force when he grabbed her arm as he entered her house and as he forced her to the floor. Gantos says that the nature of her injury, a multifragmented proximal left humerus anterior-inferior dislocation fracture to her left shoulder, is sufficient to permit a reasonable fact-finder to conclude that the level of force used by Officer Waters was unreasonable. In essence, she argues that a reasonable level of force could not have caused such an injury.

The nature of a plaintiff's injury is a relevant consideration in determining

8

whether a police officer's use of force was excessive. *See, e.g., Cortez*, 478 F.3d at 1129; *Culver v. Town of Torrington, Wyoming*, 930 F.2d 1456, 1461 (10th Cir. 1991). Viewing the evidence in the record in the light most favorable to Gantos, a reasonable fact-finder could conclude that Gantos was not resistive or threatening to the officers who grabbed her arms or to the other officers. Assuming it takes a high level of physical force to cause a multifragmented proximal left humerus anterior-inferior dislocation fracture of the left shoulder, a reasonable fact-finder also could conclude that Officer Waters must have used a high level of physical force against Gantos. However, nothing in the record indicates how much or how little physical force is necessary to cause such an injury. Therefore, I conclude that Gantos has not demonstrated that the amount of force used by Officer Waters was excessive.

Only if I assume, without supporting evidence, that a high level of physical force was necessary to cause Gantos's injury can I then also find that a reasonable fact-finder could conclude ultimately that the level of force used by Officer Waters was unreasonable under the circumstances. *See Novitsky v. City of* Aurora, 491 F.3d 1244, 1255 (10th Cir. 2007) (reasonable jury could conclude that use of twist lock on arm of cooperative suspect constituted use of unreasonable force). Such an assumption is not proper, particularly in the context of a qualified immunity analysis. However, for the purpose of a complete analysis, I will indulge this assumption for the purpose of examining the second key issue in the qualified immunity analysis.

In her Second Claim for Relief, Gantos alleges that the defendants "acted with excessive force to enter the Plaintiff's residence . . . ." *Amended Complaint* [#80], filed

9

August 22, 2007, pp. 11 - 12.[2]  To the extent this claim is directed at Officers Waters and Johnson, and concerns force other than the force that caused Gantos's shoulder injury, I conclude that Officers Waters and Johnson are entitled to summary judgment. Nothing in the record supports the conclusion that any force used in entering Gantos's house, other than the force that caused her shoulder injury, could be found to be excessive under the applicable Fourth Amendment standard.

### B. Was the Force Used a Violation of Clearly Established Law?

In general, an individual's right not to be subjected to an unreasonable use of force by police officers was clearly established on February 10, 2005, when the search warrant was executed at Gantos's house.  **See, e.g., Graham v. Connor**, 490 U.S. 386, 396-97 (1989); **Cortez**, 478 F.3d 1108.  In determining whether a right is clearly established for the purpose of a qualified immunity analysis, the "inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition...."  **Saucier**, 533 U.S. at 201.  In the context of an excessive force claim, the qualified immunity analysis has a dimension that goes beyond the question of whether or not the force used was reasonable.

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a

---

[2] The Amended Complaint docketed as docket number 80 apparently is not the complaint that the plaintiff currently intends to prosecute.  In a Joint Status Report [#76], filed August 14, 2007, the plaintiff refers to a Substituted First Amended Complaint that is attached to another filing [#68], filed August 9, 2007.  There is no indication, however, that the Substituted First Amended Complaint ever was docketed.  However, the claims asserted against the defendants in the Substituted First Amended Complaint are essentially the same claims asserted in the Amended Complaint [#80].  To the extent Gantos may have evidence or argument relevant to her Substituted First Amended Complaint, but not to her Amended Complaint [#80], she has not presented such evidence or argument in her response to the defendants' motion for summary judgment.

> particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier*, 533 U.S. at 205. Qualified immunity operates to protect police officers from the hazards of the sometimes "'hazy border between excessive and acceptable force.'" *Id*. at 206 (quoting *Priester v. Rivera Beach*, 208 F.3d 919, 926 - 927 (11th Cir. 2000)). A police officer's use of force in the context of the execution of a search warrant violates clearly established law only when the force used clearly goes beyond the hazy border between excessive and acceptable force, and clearly is in excess of the force needed to exercise unquestioned command of a very uncertain situation.

It was proper for Officers Waters and Johnson to grab Gantos by the arms, to move her across her living room, and to require Gantos to get on the floor. *Muehler v. Mena*, 544 U.S. 93, 98 (2005). Gantos's key complaint is that Officer Waters used too much physical force when applying these proper techniques. In essence, she argues that the Fourth Amendment requires a police officer to calibrate precisely the amount of physical force he or she uses when entering a highly uncertain and potentially dangerous situation, and when making the crucial initial effort to exercise unquestioned command of the situation.

Having considered all of the circumstances of this case, including the nature of Gantos's injury, I must conclude that the amount of physical force used by Officer Waters, the force that Gantos says was the cause of her injury, lies in the sometimes "'hazy border between excessive and acceptable force.'" *Saucier*, 533 U.S. at 206 (quoting *Priester v. Rivera Beach*, 208 F.3d 919, 926 - 927 (11th Cir. 2000)). Again, nothing in the record indicates how much or how little physical force is necessary to

11

cause such an injury. Even if I assume that substantial physical force is required to cause such an injury, Gantos still has not demonstrated a violation of clearly established law. Gantos has not demonstrated that the level of force necessary to cause her injury was so far in excess of the force reasonably necessary under the circumstances that any reasonable police officer would have been aware, as he or she entered a highly uncertain situation, that the level of force used by Officer Waters was in excess of the force reasonably necessary. Even if the level of force used by Officer Waters was somewhat in excess of the force that was reasonably necessary, Gantos has not demonstrated that the level of force used was beyond the sometimes hazy border between excessive and acceptable force. Gantos has not demonstrated that Officer Waters' use of force was a violation of clearly established law.

## C. Conclusion

Gantos has not met her burden of demonstrating a violation of a constitutional or statutory right. Even if I assume, based on the nature of her injury, that the force used against her was unreasonably excessive, Gantos also has not met her burden of demonstrating that Officer Waters' use of force was a violation of clearly established law. Officer Waters, therefore, is entitled to the protection of qualified immunity. To the extent Gantos's excessive force claim concerns any use of force other than the force that caused her shoulder injury, there is no evidence in the record that tends to show that any such use of force was excessive. Officers Waters and Johnson are entitled to summary judgment to the extent Gantos's excessive force claim is based on any use of force other than the force that caused Gantos's shoulder injury.

## V.  FAILURE TO INTERVENE

Gantos names Officer Johnson as a defendant based on her claim that Officer Johnson failed to intervene to prevent Officer Waters' use of excessive force against Gantos.  *Response* [#94], p. 11.  A law enforcement officer can be held liable for a failure to prevent a fellow officer's use of excessive force.  **Mick v. Brewer**, 76 F.3d 1127, 1136 (10th Cir. 1996).  However, such an officer is liable only if he or she had an opportunity to intervene.  *Id*.

Officer Johnson argues that, viewing the evidence in the light most favorable to Gantos, he did not have an opportunity to intervene and thus cannot be held liable for any use of excessive force.  Viewing the evidence in the light most favorable to Gantos, the evidence indicates that Gantos's injury occurred a very short time after Officers Waters and Johnson entered Gantos's house.  Nothing in the record indicates that Officer Johnson had an opportunity to intervene during this short time.  Further, for the reasons outlined above, Officer Johnson also is entitled to qualified immunity as to this claim.  Notably, Gantos has not demonstrated that it would have been clear to a reasonable officer in Officer Johnson's position that the level of force used by Officer Waters was unreasonable.  Gantos's has not demonstrated that Officer Johnson's alleged failure to intervene amounts to a constitutional violation.  Further, Gantos has not demonstrated that, from Officer Johnson's perspective, it would have been clear to a reasonable officer that Officer Water's conduct was unlawful.  Officer Johnson is entitled to summary judgment on Gantos's claim both because the undisputed facts in the record demonstrate that he did not have an opportunity to intervene, and because he is entitled to qualified immunity on the failure to intervene claim.

## VI. MUNICIPAL LIABILITY

In her third claim for relief, Gantos seeks to hold the City of Colorado Springs liable for the alleged use of excessive force by Officers Waters and Johnson, as described above. A municipality or other local government unit is liable for constitutional torts only if the alleged unconstitutional acts implement a policy, ordinance or custom of the local government. ***Monell v. Department of Social Services***, 436 U.S. 658, 690, 694 (1978); ***Garcia v. Salt Lake County***, 768 F.2d 303, 308 & n.4 (10th Cir. 1985). A municipality is responsible under § 1983 only when the execution of a government policy or custom actually causes an injury of constitutional dimensions. ***Monell***, 436 U.S. at 694; *see also* ***D.T. v. Independent School District***, 894 F.2d 1176, 1187 (10th Cir. 1990) (plaintiff must prove direct nexus between constitutional tort and municipality's authorization or approval thereof, either expressly or otherwise, by the adoption of any plan or policy). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under ***Monell***, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." ***Oklahoma City v. Tuttle***, 471 U.S. 808, 823 (1985).

The City of Colorado Springs argues that it is entitled to summary judgment on Gantos's claim against it because 1) the defendant Colorado Springs Police officers committed no constitutional tort; and 2) even if there was a constitutional tort, Gantos cannot establish that any policy or custom of the city was a direct causal link to Gantos's alleged injury. As discussed above, I conclude that the evidence in the record is not sufficient to demonstrate that Officer Waters used an unreasonable level of

physical force when he entered Gantos's house and grabbed her arm as Officer Waters and several other officers entered the house. Even if there were sufficient evidence that Officer Waters used excessive force, the evidence in the record is not sufficient to permit a reasonable fact finder to conclude that a policy or custom of the Colorado Springs Police Department caused Gantos's injury.

Gantos argues that the Colorado Springs Police Department "has established a custom and practice of ratification of officer and supervisory misconduct which permit continued misconduct on the part of all officers . . . ." *Response*, p. 17. To establish a municipal liability claim based on custom, Gantos must show: 1) the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the city; 2) deliberate indifference to or tacit approval of such misconduct by the city's policy makers after the policy makers knew of the misconduct; and 3) that Gantos was injured by virtue of unconstitutional acts taken pursuant to the city's custom and that the custom was the moving force behind the unconstitutional acts. **Gates v. Unified School Dist. No. 449 of Leavenworth County, Kan**., 996 F.2d 1035, 1041 (10th Cir. 1993). Gantos argues three bases for imposing liability on the City of Colorado Springs. First, she notes numerous prior complaints of excessive force against Colorado Springs Police officers. Second, Gantos claims that the police department's policies concerning the reporting of excessive force complaints, and its policy concerning a supervisor's evaluation of such complaints, are inadequate. Third, she claims that the police department has a custom of not enforcing certain policies related to excessive force. I examine each of these bases in turn.

### A. Prior Excessive Force Complaints

Relying on discovery provided by the City of Colorado Springs, Gantos notes that there were 335 complaints of improper use of force by a Colorado Springs Police Officer between 2000 and 2005. Between 2000 and 2005, there were about 80 claims for compensation against the department. Nothing in the record indicates what portion of these 80 complaints involved use of force issues. Between 2000 and 2005, 18 lawsuits were filed alleging improper use of force by Colorado Springs police officers. The record does not indicate whether any, most, or all of these complaints, claims, or lawsuits had merit, or how they were resolved. Between 2002 and 2005, the internal affairs division of the police department "sustained" six complaints involving a claim that a Colorado Springs Police officer had used excessive force. *Response*, Exhibit 13, request for production # 7. It is not clear precisely what the word "sustained" means in this context, but it appears to indicate that the complaint was found to have some validity.

Previous complaints that CSPD officers used excessive force, without more, do not tend to show that there was within the CSPD a widespread practice of using excessive force, nor does it tend to show that the department had a policy or custom of tolerating the use of excessive force. Absent some showing that the previous complaints had merit, and that the CSPD avoided or ignored meritorious complaints, such previous complaints do not support a municipal liability claim. ***Mettler v. Whitledge***, 165 F.3d 1197, 1205 (8th Cir. 1999). Previous complaints alone do not tend to show that the city was indifferent to or approved of the use of excessive force by its police officers.

### B. Reporting Policies and Supervisor's Evaluation Policy

The City of Colorado Springs does not require that all claims alleging police excessive force be reported to the police department. Gantos says some such claims are made to the city's risk management office or to the City Attorney's office, but these agencies are not required to relay such reports to the police department. In addition, the CSPD does not require that the internal affairs division of the police department be notified when a person is injured in connection with a CSPD operation. The CSPD has a policy that requires an on-duty supervisor to make "an initial evaluation of any case in which an officer, arrestee, or other person incurs any physical injury as a result of enforcement action." *Response*, Exhibit 14 (General Orders 765.40). Gantos notes that the policy does not specify the particular requirements for such an initial evaluation.

Gantos argues that this regulatory scheme demonstrates that the city has a custom of not enforcing its policies and that the city's policies lack sufficient substance, detail, and direction to ensure that constitutional violations by its police officers are discovered and disciplined. According to Gantos, the city has failed to ensure that all allegations of excessive force concerning its police officers are reported to the police department, which permits many such complaints to escape scrutiny and discipline. According to Gantos, police officers know of these policy deficiencies and these deficiencies encourage officers to act unconstitutionally, knowing there is little likelihood of being disciplined. Gantos claims that these circumstances create "a mind set of immunity to allegations of constitutional violence in the course of their work, giving rise to the use of the kind of force that broke Ms. Gantos['s] shoulder in several

17

places." *Response*, p. 19.

As noted above, Gantos has not demonstrated a widespread practice of using excessive force. Absent such a showing, her criticisms of the city's policies cannot be seen as exhibiting indifference to or tacit approval of the widespread use of excessive force. Gantos speculates that the regulatory scheme she describes "creates a mind set of immunity to allegations of constitutional violations." *Response*, p. 19. Such a mind set, presumably, would have police officers thinking that they can use excessive force without fear of detection or punishment. However, there is no evidence in the record that indicates that Colorado Springs police officers generally, or Officers Waters and Johnson specifically, actually have a mind set of immunity to allegations of constitutional violations. Even if such a mind set did exist in the CSPD, there is no evidence that this mind set actually caused CSPD officers to use excessive force, or that such a mind set caused Officers Waters and Johnson to use excessive force against Gantos. Thus, Gantos has not demonstrated a causal connection between the policies and customs she describes and her injury.

## C. Non-Enforcement of Excessive Force Policies

Sgt. Ryan of the CSPD was the supervisor on the scene at the execution of the warrant at Gantos's house. Sgt. Ryan was aware of Gantos's injury , but he did not ask Gantos how her arm was injured, and he did not speak with the officers on the scene about Gantos's injury. Sgt. Ryan concluded that the force used by the officers was reasonable, and he did not initiate a complaint for an internal affairs investigation of the officers. Sgt. Ryan told Gantos that she could file a claim with the city, but he did not tell her that she could file a claim or complaint with the police department. Gantos

18

claims that Sgt. Ryan's investigation did not comply with the requirement that he make "an initial evaluation of any case in which an officer, arrestee, or other person incurs any physical injury as a result of enforcement action." *Response*, Exhibit 14 (General Orders 765.40).

Gantos claims that Sgt. Ryan's actions at Gantos's house demonstrate a "routine custom of covering up injuries or allegations of excessive force," which custom is "enabled by the City's policies and administration." *Response*, p. 19. Assuming Sgt. Ryan's actions can be seen as covering up injuries and allegations of excessive force, one incident does not establish a routine or custom. Gantos's other evidence, outlined above, also does not tend to show such a routine or custom. At most, Gantos speculates that the city's regulatory structure might permit the city to discourage excessive force allegations and to minimize such allegations. However, she has not come forward with evidence that discouraging and minimizing such allegations is the actual custom and practice of the city. If Sgt. Ryan violated any city regulations when he was handling the search at Gantos's house, such a violation is not sufficient, by itself, to show that the city had a custom and routine of permitting such violations.

### D. Conclusion

Viewing the evidence in the record in the light most favorable to Gantos, no reasonable fact finder could conclude that the City of Colorado Springs, including the CSPD, 1) had a continuing, persistent and widespread practice of unconstitutional misconduct by the city; 2) exhibited deliberate indifference to or tacit approval of such misconduct; and 3) that Gantos was injured by virtue of unconstitutional acts taken pursuant to the city's alleged custom and that the custom was the moving force behind

19

the unconstitutional acts. Therefore, the City of Colorado Springs is entitled to summary judgment on Gantos's municipal liability claim.

### VII. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the defendants' **Motion for Summary Judgment** [#83], filed November 15, 2007, is **GRANTED**;

2. That the plaintiff's claims against the defendants, the City of Colorado Springs, Police Department, Officer Jim Waters, and Officer Daryl Johnson, are **DISMISSED**;

3. That **JUDGMENT SHALL ENTER** in favor of the defendants, the City of Colorado Springs, Police Department, Officer Jim Waters, and Officer Daryl Johnson, and against the plaintiff, Deborah Gantos;

4. That the defendants, the City of Colorado Springs, Police Department, Officer Jim Waters, and Officer Daryl Johnson, are **AWARDED** their costs to be taxed by the Clerk of the Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

5. That this case is **CLOSED**.

Dated February 20, 2008, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**